*Hurricane Case*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **DIANA STEVENS-REYNOLDS** * | |
| * | |
| * | **CIVIL ACTION NO.** |
| **VERSUS** * | |
| * | |
| * | |
| **WILSHIRE INSURANCE COMPANY,** * | |
| **AND IAT INSURANCE GROUP** * | |
| * | |

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

## COMPLAINT FOR DAMAGES

**NOW INTO COURT,** through undersigned counsel, comes the complainant, Diana Stevens-Reynolds (hereinafter "Complainant"), and files her Complaint for Damages against Defendant, Wilshire Insurance Company, and IAT.

Insurance Group ("IAT"), respectfully averring as follows:

      I.    **PARTIES**

**1.**

Made Plaintiff herein is **Diana Stevens-Reynolds ("Complainant")** a citizen domiciled in Lake Charles, Louisiana.

**2.**

1. Made Defendant(s) herein is **Wilshire Insurance Company**, an insurer domiciled in North Carolina who is authorized to do and is doing

1

business in the State of Louisiana and the Parish of Calcasieu, which may be served through its Registered Agent for Service of Process, the Louisiana Secretary of State 8585 Archives Ave, Baton Rouge Louisiana 70809.

2. Made Defendant(s), **IAT. Insurance Group**, the parent company of Wilshire Insurance Company, also domiciled in North Carolina and is Authorized to do business in the State of Louisiana and the Parish of Calcasieu, which may be served through its Registered Agent for the Service of Process, the Louisiana Secretary of State, 8585 Archives Ave, Baton Rouge, Louisiana 70809.

## II.   JURISDICTION AND VENUE

3.

Jurisdiction is proper in this Honorable Court pursuant to 28 USC § 1332 and 1441 because complete diversity of citizenship exists between the parties and because the amount in controversy is greater than the minimum jurisdictional amount.

4.

Venue is proper in this Honorable Court pursuant to 28 USC §1391(b) because a substantial part of the events or omissions giving rise to the claim

occurred in this District; Complainant resides in this District and the properties that are the subject to the dispute between Complainant and Defendant are located in this District.

5.

Defendants are justly and truly indebted and obligated unto "Complainant." Reynolds herein, for the reasons and amounts hereafter set forth with particularity.

### III.   RELEVANT FACTS

1. **"THE PROPERTIES"**

At all times relevant hereto, Complainant owned the properties located at **2029 See St**., Lake Charles, Louisiana 70601, **2510 Mary St**., Lake Charles, Louisiana 70601, **2222 Woodring St**., Lake Charles, Louisiana 70601, **213 Decker St**., Lake Charles, Louisiana 70615, collectively hereinafter referred to as (the "Properties").

6.

Wilshire Insurance Company and IAT. Insurance Group (hereinafter referred to as "Defendant IAT."), insured the "Properties" from May 10, 2020, until May 10, 2021, under policy number CP0000276617.

7.

The Policy covered the "Properties" against specifically named perils, including hurricanes, wind, and hailstorms.

**8.**

On or about August 27, 2020, hurricane Laura made landfall in the Lake Charles area causing substantial damage to Complainant's "Properties."

**9.**

Complainant promptly reported the damages to Defendant "IAT.," who assigned claim number(s) 027617430950 for the "Properties," the hurricane Laura Claim(s).

**10.**

The Complainant proceeded to tarp the roofs to prevent further damage as required by the terms of the contract of insurance.

**11.**

On September 13, 2020, Defendant "IAT." inspected the "Properties" for hurricane damage. On September 22, 2020, Defendant "IAT." issued its initial payment in the amount of $33,380.48.

**12.**

This "payment" included a payment of $2,027.40 for the damages claimed at 2029 See St. "Complainant's" Policy for the "properties" did not provide any coverage for loss of rents.

**13.**

This attempt to bankrupt "Complainant" caused her to turn to friends and family members to provide the labor to replace the roofing "shingles."
and demo the interior of the "Properties."

### 14.

However, while addressing "Hurricane Laura" on October 9, 2020, "Hurricane Delta" made landfall in the Lake Charles area, causing additional damages to Complainant's "Properties."

### 15.

Complainant promptly reported the losses to Defendant "IAT." who assigned the claim number(s) 027617454543 (the "Hurricane Delta Claim(s)").

### 16.

Based on the limited payment received for the Laura damages, on October 26, 2020, Complainant hired Frontline Public Adjusting Company to assist with supplemental damages for Laura and additional damages caused by Delta.

### 17.

On November 25, 2020, Frontline Public Adjusting Company submitted the scope of damages, photos, and a sworn statement in proof of loss for the supplemental damages caused by Laura in the amount of $367,225.81.

### 18.

On May 5, 2021, 150 days after receiving the Claimant's proof of loss, Defendant "IAT." made a supplemental payment of $118,917.75 for Laura.

Creating a disputed amount of $214,927.58 in Laura Damages.

In November 2021, 13 months after receiving additional damages from Hurricane Delta, and no response from Defendant "IAT, "Complainant." hired Frontline Public Adjusting to assist with the additional claim for Delta. On November 30, 2021, Frontline Public Adjusting provided Defendant "IAT" with a scope of damages for $374,034.09 for Delta damages.

**19.**

This scope included the roof decking that was damaged and needed to be replaced. However, the original estimate provided by Defendant "IAT." did not provide any payments for roof decking, causing the "Complainant" to install new shingles on severely damaged decking.

**20.**

Defendant IAT made its initial payment in the amount of $33,380.48 on September 13, 2020. After inspecting the property on several occasions, they made a supplemental payment of $118,917.75 on May 5, 2021, for a total claim payment of $152,298.23.

**21.**

Having visited the property, sending engineers to the property, and receiving documented proof of additional damages, Defendant "IAT" has yet to pay for the roof decking that is so severely damaged it has become unsafe to walk on.

**22.**

This deliberate act of intentional and unreasonable delays and underpayments have caused "Complainant" to lose rental income on the "Properties" that, as of the filing of this suit, is still not repaired.

**23.**

The Complainant estimates her damages to the "Properties" and loss of income to be more than $653,961.67. Defendant "IAT." has failed to timely and adequately compensate the Complainant for the property damages and income loss because of Hurricane Laura and Hurricane Delta.

**24.**

Upon information and belief, Defendant "IAT." failed to timely and adequately compensate Complainant for her loss; after receiving satisfactory proof of loss, was arbitrary, capricious, and without probable cause.

**25.**

Upon information and belief, Defendant "IAT." conducted the investigation and claims handling for Complainant's claim in bad faith pursuant to Louisiana's bad faith statutes, La RS §§§ 22:1892, 22:1893 and 22:1973

**26.**

Upon information and belief, Defendant "IAT" arbitrarily, capriciously, and without probable cause failed to include the damaged roof decking that has now

caused Complainant to install new shingles over bad decking.

**27.**

As a result of Defendant "IAT"'s failure to timely and adequately compensate Complainant for her losses; Complainant was forced to incur the expense of retaining counsel and other costs to prosecute her claim.

**28.**

Complainant has incurred or will incur additional expenses in restoring the "Properties" as a result of Defendant "IAT"'s failure to timely compensate her for her substantial and covered losses.

**29.**

2. "**THE MOTEL**"

At all times relevant hereto, Complainant owned the "motel" located at **2208 Commercial St.** in Lake Charles, Louisiana, 70601, hereinafter referred to as (the "Motel").

**30.**

Wilshire Insurance Company and IAT. Insurance Group (hereinafter Referred to as "Defendant IAT."), insured the "Motel" from April 01, 2020, until April 01, 2021, under policy number CP00027589.

**31.**

The Policy covered the "Motel" against specifically named perils, including hurricanes, wind, and hailstorms.

**32.**

On August 27, 2020, the 'Motel" sustained wind damage caused by Hurricane Laura. The roof was damaged, and the electrical meter and pole were destroyed by a fallen tree on the property.

**33.**

Complainant promptly reported the damages to Defendant "IAT.", who assigned claim number 027589430951 for the "Motel," the hurricane Laura claim.

**34.**

The Complainant proceeded to tarp the roof and hire an electrician to remove and repair the down electrical lines. The building suffered significant framing, electrical, roofing, and interior damage to each of the 32 rooms at the "Motel." The entryway was blocked by mangled framing and steel posts that were completely destroyed and needed to be removed.

**35.**

Complainant, with the help of friends and family members, installed temporary shoring and framing to secure the front entrance of the "Motel."

**36.**

On or about September 10, 2020, Complainant provided Defendant "IAT." photos and copies of the electrical repairs, framing damage, trees, and debris, as well as the tarping bill for the temporary repairs required to prevent any further

damages.

**37.**

However, rather than investigate and inspect the site as required by the terms of the contract, Defendant "IAT." immediately sent out a notice of denial alleging the roofing "shingles" are not covered; therefore, the "entire" claim isn't covered.

**38.**

This act caused Complainant to receive lien letters from the tarping company, lien and collection notices from the electrician, and numerous sleepless nights with 32 rooms taken off the market at a time when they were badly needed. Complainant estimated the market value of the rooms per night at the time were $150.00 each. With 32 rooms, Complainant was losing $5,289.60 per night.

**39.**

In an effort to get some relief, on September 25, 2020, Complainant hired Frontline Public Adjusting to help stop the hemorrhaging of lost income from the "Motel" being unoccupied.

**40.**

Despite the notices and phone calls to Defendant "IAT" and their adjusters, still no response.

**41.**

On October 9, 2020, hurricane Delta made landfall in Lake Charles and

causing more damage to the "Motel."

**42.**

Complainant timely filed a claim for additional damages caused by hurricane Delta. Defendant "IAT." assigned claim number 027589456337. Despite Complainant losing more than $5,000.00 per day is lost revenue, Defendant "IAT" failed to inspect and investigate the claims filed for hurricane damages at the "Motel."

**43.**

Complainant has now lost her income stream from the four rental properties and the Motel, all insured by Defendant "IAT." Because of the lack of insurance proceeds, Complainant had to turn to nonprofit organizations and community help groups to seek assistance in repairing the properties that were now all damaged by hurricanes, and Defendant "IAT"'s refusal to pay.

**44.**

In July 2021, the Complainant received an estimate for the hurricane damages at the "Motel" in the amount of $392,257.34.

**45.**

on August 6, 2021, Defendant "IAT" finally issued payment for both Laura and Delta for $7,854.07 for the damages to the "Motel."

**46.**

On August 6, 2021, at the time of receiving the first payment, Complainant's estimated property damages and income losses at the "Motel" were **$2,224,912.00**.

**47.**

Upon information and belief, Defendant "IAT" conducted an investigation and claims handling for Complainant's claim in bad faith, pursuant to Louisiana's bad faith statutes, La. RS §§§ 22:1892, 22:1893 and 22:1973.

**48.**

Upon information and belief, Defendant" IAT"'s failure to timely and adequately compensate Complainant for her loss after receiving satisfactory proof of claim, was arbitrary, capricious, and without probable cause.

**49.**

Complainant has incurred or will incur additional expenses in restoring the "Motel" as a result of Defendant "IAT."'s failure to timely compensate her for her substantial losses.

**50.**

As a result of Defendant "IAT" failure to timely and adequately compensate Complainant for her covered loss, Complainant was forced to incur the expense of retaining counsel and other expenses to prosecute her claim(s).

### 3. CAUSES OF ACTION

#### A. Breach of Insurance Contract

**51.**

Complainant realleges and re-avers the allegations contained in paragraphs 1-50, above, as if restated herein.

**52.**

An insurance contract, the "Policy", exists between Complainant and "IAT.".

**53.**

The "Policy" provides coverage for perils, including hurricanes.

**54.**

Having received satisfactory proof of loss for damages caused by the covered perils, Defendant "IAT" failed to timely tender adequate insurance proceeds as required by the "Policy."

**55.**

By failing to timely tender adequate insurance proceeds after receiving satisfactory proof of loss from the insured, Defendant "IAT" breached the "Policy."

**56.**

Defendant "IAT" misrepresentation of the terms and conditions of the

"Policy" to Complainant was arbitrary, capricious, and without probable cause.

**57.**

By knowingly not including visible damages to the "Properties," Defendant "IAT" breached the "Policy."

**58.**

In refusing to conduct a timely investigation of the Complainant's Motel claims in good faith and fair dealing, Defendant "IAT" breached the "Policy."

**59.**

Complainant has suffered and continues to suffer damages as a result of these breaches of the Policy.

**B. <u>Bad Faith</u>**

**60.**

Complainant realleges and re-avers the allegations contained in Paragraphs 1-59, above, as if restated herein.

**61.**

The actions and/or inactions of Defendant "IAT." in failing to timely and adequately compensate Complainant for the covered losses under the "Policies" were arbitrary, capricious, and without probable cause-as pursuant to La. RS

§§§22:1892, 22:1893, and 22:1973, making Defendant "IAT" liable for statutory bad faith penalties.

### 62.

Under La. RS §22:1973, an insurer owes a duty of good faith and fair dealing with an insured and has an affirmative duty to adjust claims fairly and promptly; failing to pay a claim in a manner arbitrary, capricious, or without probable cause is in violation of La. RS §22:1973.

### 63.

Failing to pay the amount of any claim due to any person insured by the contract within 60 days after receipt of satisfactory proof of loss from a claimant when such failure is arbitrary, capricious, or without probable cause is considered bad faith and violates La. RS §22:1973

### 64.

La. RS §22:1892 imposes bad faith penalties on insurers who fail to adequately pay claims following satisfactory proof of loss within (30) days.

### 65.

Defendant "IAT." violates La. RS §§22:1973 and 22:1892 for failing to provide Complainant adequate payment in connection with her Wind/Hail claims during Hurricane Laura and Delta, after having received satisfactory proof of loss from the insured and following their inspections of

the "Properties" and "Motel".

## 66.

Defendant "IAT."'s misrepresentation of the relevant facts and/or the terms of the Policy was in bad faith.

### C. Negligent Infliction of Emotional Distress

## 67.

Defendant "IAT" issued insurance policies with the knowledge that the contracts did not provide any relief for the loss of income or revenue.

## 68.

Defendant "IAT" knew or should have known Complainant dependant heavily on the income from the "Properties" and the "Motel." Defendant "IAT"'s initial underpayments were made to cause the Complainant to suffer from severe stress and sleepless nights.

## 69.

Defendant "IAT" acts to deny a claim in September of 2020 only to make a payment nearly a year later can only be described as arbitrary, capricious and without probable cause. This act created undue financial burden and stress.

## 70.

Defendant "IAT" deliberate act to pay $2,027 for hurricane damages

in September 2020 only to return in May 2021 and Pay in excess of $40,000.00 was done to cause the Complainant undue stress and financial hardship.

### 71.

Defendant "IAT" was provided with lien notices, legal notices, and city notices threatening to take action against Complainant. Defendant's failure to act or respond to the notices created undue financial hardship and stress.

Having this information about legal threats, construction liens, and city fines, Defendant's failure to act caused Complainant to lose sleep, anxiety about losing her properties and a tremendous amount of stress.

### 72.

**WHEREFORE**, Complainant Diana Stevens- Reynolds prays that after due proceedings and legal delays, there be a judgment herein in favor of Complainant, and against Defendant "IAT" for all actual damages, general damages, and special damages, including general, special, and punitive damages under La. RS. §§§22:1892, 22:1893, and 22:1973, together with legal interest from the date of the judicial demand, and all costs of these proceedings.

### 73.

**COMPLAINANT FURTHER PRAYS**, for all orders and decrees necessary in the premises for full, general, and equitable relief.

                                      Respectfully Submitted,

                                      _/s/ Harry E. Cantrell, Jr._
                                      Harry Cantrell
                                      Cantrell Law Group, LLC
                                      724 Kirby St.
                                      Lake Charles, LA. 70601
                                                or
                                      Cantrell Law Group, LLC
                                      1615 Poydras St. Ste 900
                                      New Orleans, LA. 70112

**PLEASE SERVE DEFENDANT**

Through the secretary of State

Wilshire Insurance Company
8585 Archives Ave
Baton Rouge, LA. 70809

IAT Insurance Group
8585 Archives Ave
Baton Rouge, LA. 70809